## County of Clinton v. J. T. Pace.

1. PAUPERS—*Physician's Bills—Liability of the County.*—Under Sec. 24, Chap. 107, R. S., entitled "Paupers," before a physician is entitled to pay for medical services rendered to one not a pauper, it must appear the person treated does not come within the definition of a pauper; that he has fallen sick and has neither money nor property with which to pay for medical aid.

2. SAME—*Duty of Town Officers.*—Under such circumstances it becomes the duty of the overseer of the poor of the town to give, or cause to be given, to the sick person, such assistance as he may deem necessary and proper, subject to such rules as the county board may prescribe.

3. SAME—*Rules of the County Board—Presumptions.*—In a suit against a county, under Chapter 104, R. S., entitled "Paupers," it is to be presumed that the county board had not prescribed any rules or regulations relating to paupers, from the fact that none were offered in evidence.

4. SAME—*Liability of the County.*—A county is liable for necessary services rendered by a physician, where prompt and immediate action is required, without notice to, or permission from, the overseer of the poor.

County of Clinton v. Pace.

5. OVERSEER OF THE POOR—*Power to Contract—Services Rendered and to be Rendered.*—Notice to the overseer of the poor and application for authority to treat a person at the expense of the county, should be made within a reasonable time after the necessity arises, but the fact that the overseer may not have given the authority for some weeks after receiving the notice, is immaterial. His authority to bind the county, in a proper case, for services to be rendered, as well as for those already rendered, is ample.

6. EVIDENCE—*The Weight of.*—Questions of the weight of the testimony are for the court, when exercising the functions of a jury; the decision of a court sitting as a jury, and passing upon questions of fact, can not be set aside by the Appellate Court unless the finding is manifestly against the weight of the evidence.

7. DEFENSES—*Partial Allowance of a Claim by a County Board.*—The fact that a claim presented to the county and allowed in part was not duly sworn to, is no defense in an original action on the *quantum meruit* in the Circuit Court.

8. PLEADING—*Common Counts Sufficient.*—In an action against a county for services rendered to a poor person under the pauper act, a declaration containing the common counts only, is sufficient.

9. COSTS—*Against a County.*—In an action against a county for services rendered under the pauper act, when the county is unsuccessful, the costs are properly adjudged against it.

**Assumpsit,** for services rendered. Appeal from the Circuit Court of Clinton County; the Hon. ALONZO S. WILDERMAN, Judge, presiding. Heard in this court at the February term, 1895. Affirmed. Opinion filed July 1, 1895.

M. P. MURRAY, attorney for appellant.

VAN HOOREBEKE & FORD, attorneys for appellee.

MR. PRESIDING JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

Under section 24 of the act in relation to paupers, before a physician is entitled to be paid for medical services rendered to one not a pauper, it must appear:

1. That he does not come within the definition of a pauper.

2. That he has fallen sick.

3. That he has neither money nor property with which to pay for medical aid.

Under such circumstances, it becomes the duty of the overseer of the town to give, or cause to be given, to the sick person, such assistance as he may deem necessary and proper, subject to such rules and regulations as the county board may prescribe.

In this case, Anton Felltrop was not a pauper within the definition of the word; he fell sick—that is to say his leg was broken—and he had neither money nor property with which to pay for medical aid. It is to be presumed that the county board had not prescribed any rules or regulations for such cases, inasmuch as no such rules or regulations were offered in evidence, which would certainly have been done if such rules or regulations were in existence and were favorable, as a matter of defense, to appellant. The County of Perry v. City of Du Quoin, 99 Ill. 479.

Thus it appears that the facts satisfy all the requirements of the statute, and concur to create a liability on the part of appellant, unless it was obligatory on appellee, the attending physician, to obtain authority from Nordman, the supervisor and *ex officio* overseer of the poor of the town, to treat the patient, and to obtain such authority either before the commencement of the treatment, or, if the case was one of overruling necessity, as soon thereafter as practicable.

The third, fifth and eleventh propositions of law presented to the court by appellant and marked refused, presented the theory that no recovery could be had for any services whatever, rendered without permission from the overseer of the poor. This is not the law. The county has been held to a liability for necessary services rendered by a physician where prompt and immediate action is required, without notice to, or permission from, the overseer of the poor. County of Christian v. Rockwell, 25 Ill. App. 20, and County of Fayette v. Morton, 53 Id. 552. Under these authorities, appellant was clearly liable for the first services rendered by appellee in the treatment of Felltrop. Hence the court properly refused to hold the proposition of law mentioned above.

But it is contended by appellant that Felltrop was hurt on January 7th; that appellee began treating him on that

day and continued his visits daily, and sometimes twice a day, during the remainder of January, and thereafter with less frequency till the 21st of May; that appellee gave no notice to the overseer of what he was doing, and sought not to obtain authority to treat Felltrop till the last week of February; and that such authority was not given until the 1st of March, and was prospective only. It is true that the overseer testified to facts from which the disputed portions of the foregoing statements might be deduced.

On the other hand, appellee testified that he told Nord-man, within two or three, or three or four days after the accident, that he did not know what the man's financial condition was, but that he, appellee, would expect pay for his services, and that Nordman promised to go and see Felltrop; that "he said he would go out and see about it."

Now if the court acted upon appellee's testimony, there is sufficient justification for a finding that an emergency had arisen requiring immediate action, and that application for authority to treat the patient at the expense of the county was made within a reasonable time thereafter. The fact that the overseer may not have given the authority for some weeks after notice to him is immaterial. The physician had done his duty, and the delay of the overseer could not be held to relieve the county from discharging its duty under the law, toward the necessitous.

But it is said that the testimony of Nordman was entitled to more weight than that of appellee. But this was a question for the court, exercising the functions of a jury. The decision of the court, sitting as a jury and passing upon questions of fact, can not be set aside by an appellate court unless the finding is manifestly against the weight of the evidence. But the decision of the case does not rest on this proposition alone. Nordham admits that, during the first week of March, he authorized appellee to treat Felltrop. It is argued that this authority related solely to the future, and that, if it did not, the agreement to pay for past services would not be binding upon the county.

Nordman testified that Felltrop was not under his care as

overseer; that he, the witness, had not "received" Felltrop as a pauper before visiting him in March, at which time he asked the sick man whether he had any means or not, and was answered in the negative, and that he accepted Felltrop as a pauper from the 1st of March. These statements amount to no more than that Nordman had not acted on the case prior to the 1st of March; they do not go to the extent of showing that the authority given on March 1st was not an action on the whole case, a determination by the overseer that the assistance theretofore given, as well as that to be given thereafter, was necessary and proper. In this view of the matter, the fact that Nordman certified to the whole account of appellee as correct, when the same was presented to the county board, is entitled to great weight, not as binding upon appellant, but as showing that the authority given by the overseer was to have a retrospective as well as a prospective effect.

We see no reason why the overseer, who is required to cause such assistance to be rendered as he may deem necessary and proper, may not examine into the case while the treatment, originating in an emergency, is progressing, and accept past services while contracting for a continuation thereof in the future. The chief object of the statute is to have the judgment of the overseer on the case, based on his personal knowledge, to prevent imposition on the county, and this object is accomplished if a personal examination is made before the necessity for county aid has terminated. We deem it unnecessary to notice with particularity the other points presented in appellant's brief. Even if the claim presented to and allowed in part by the county board was not duly sworn to, this is no defense in an original action on the *quantum meruit* in the Circuit Court. Supervisors La Salle Co. v. Reynolds, 49 Ill. 186, and County of Grundy v. Hughes, 8 Bradw. 34. We hold also that in such case, a declaration containing the common counts is sufficient, and that the costs are properly adjudged against the county.

The judgment is affirmed.