STATE OF NEBRASKA, EX REL. SETH THOMAS CLOCK COMPANY, v. BOARD OF COUNTY COMMISSIONERS OF CASS COUNTY.

FILED SEPTEMBER 19, 1900. No. 11,199.

1. **Reason for Conduct: ESTOPPEL BY DECLARATION.** Where a party gives a reason for his decision and conduct touching a matter involved in controversy, he is estopped, after litigation has be-

gun, from changing his ground and putting his conduct upon another and different consideration. *Ballou v. Sherwood*, 32 Nebr., 666, followed.

2. **Reason for Rule.** The right to invoke the above rule rests upon proof of the conduct of the parties before litigation is begun, and is not rendered unavailable because other issues are raised by the pleadings.

3. **Statute:** MANDAMUS: PLEADING. Under section 652 of the Code, regulating mandamus, the plaintiff may on the trial avail himself of any valid objection to new matter contained in the answer as to its sufficiency, or by proof in denial or by way of avoidance.

4. **Contract:** TERMS: EVIDENCE ALIUNDE. A contract will generally be construed solely by reference to its own language and terms; but where the language is uncertain or ambiguous, other evidence may be considered, not for the purpose of contradiction, but to explain the uncertainty or ambiguity.

5. ——: ——: ——: CONSTRUCTION: CONDUCT OF PARTIES. Where both parties to a contract, regarding which there may be doubt or uncertainty as to a proper construction, by their actions under and with reference to it, and with knowledge of its terms, have given to such contract one and the same construction, it is generally a safe rule to adopt such construction.

6. ——: INDIVIDUAL SIGNATURE: AGENT: PRINCIPAL. A contract, even though signed by the agent individually, will be held to be the contract of the prinicpal, if it appear by its terms that it was intended and executed as the contract of the principal.

7. **Res Adjudicata:** QUESTION EXPRESSLY DECIDED: QUESTIONS NECESSARILY INVOLVED. A question once decided by this court in the trial of a case will be held to be the law of the case during its future course of procedure, and will not be overturned unless manifestly incorrect. This rule applies, not only to points expressly decided, but to all questions presented in the record and necessarily involved in the decision rendered.

8. **Questions of Law:** QUESTIONS OF FACT. The above rule applies to questions of law and not of fact, where the conclusion reached is based upon testimony materially different.

9. **Claim Against County:** DESIGNATION OF COUNTY: IRREGULARITY. A claim in favor of a party for property sold to a county under a contract with the county, wherein it is recited that the property was sold to the county commissioners of such county as per agreement, *held* to be a claim against the county, and the failure to designate the county by name as debtor was only an irregularity which did not affect the validity of the claim.

10. **Delivery is Filing.** A claim is filed when delivered to the county clerk to be acted upon by the county board, even though the clerk fail to indorse upon such claim the fact and time of the filing thereof.

11. **Power of Board: STATUTE.** The power and jurisdiction of the county board to act upon claims is derived from section 23, article 1, chapter 18, Compiled Statutes, 1899, and not from section 37 of said chapter.

12. **Statute: JURISDICTION.** Section 37 regulates the grant of power and mode of procedure in the allowance of claims against the county, and the failure to observe its provisions does not deprive the commissioners of a county of jurisdiction to act upon claims against the county.

13. **Evidence: FINDING.** Evidence examined, and found not to support a finding by the trial court that one C. M. Wickersham was doing business as, and under the assumed name of, S. L. Wickersham.

14. **Res Adjudicata.** Former holding of this court as to the agency of S. L. Wickersham adhered to.

ERROR to the district court for Cass county. Tried below before RAMSEY, J. *Reversed. Rehearing granted. Opinion modified.*

Alfred W. Agee, Byron Clark and C. A. Rawls, for plaintiff in error.

*Matthew Gering* and *Samuel M. Chapman, contra.*

HOLCOMB, J.

Mandamus proceedings were instituted in the district court for the purpose of requiring respondents, as county commissioners, to enter an order on the county clerk to draw a warrant in favor of relator, and to require the clerk to draw such warrant for the purpose of payment of a claim in favor of relator, theretofore allowed by said commissioners. Respondents declined to comply with the request of the relator because, as claimed by them, a warrant had already been drawn and delivered to relator's agent and paid, thereby constituting full payment for the

claim so allowed. The case was tried and brought to this court for review. The opinion is reported in 53 Nebr., 767. It was there held that no payment had been made, as claimed, and that relator's right to the warrant for the amount of his claim as allowed by the county commissioners, together with legal interest, was conclusively established. The judgment of the lower court was reversed and the case remanded. Upon a retrial of the case an amended answer was filed by the respondents, entirely changing the issues from those raised on the first trial. From a careful examination of the record, and briefs of counsel, we are of the opinion that on the first trial the only defense existing that could be interposed with reasonable hope of success was presented. The defense thus interposed, viz., payment, being finally determined adversely to the respondents, a new trial was had, and the case is, after several years of delay and the attendant concomitants of litigation,—accumulated costs and interests,—again presented for consideration.

Notwithstanding the change in issues as raised by the amended answer, it is insisted by the relator that, respondents having based their refusal to allow the warrant upon the ground of prior payment, they are now estopped from changing their ground and resisting, as is sought to be done, upon the plea that no contract existed or had been entered into between relator and respondents, and that no claim was ever allowed in relator's favor, and that nothing is or has been due from respondents to relator as claimed. We think there is much merit in this contention. A contract was in fact entered into, although it is now claimed with a different party than relator. The clock was furnished in accordance with the terms of the contract, and a claim for the amount due under that contract presented in favor of relator and against the county, and by the commissioners passed upon, approved and allowed. A warrant was drawn and, as determined in the prior case, delivered to a party wholly unauthorized to receive it, which in law constitutes no payment; and a

refusal to draw and deliver to relator a warrant in pursuance of the allowance of the claim was solely on the ground of the alleged prior payment. These matters were all contested and finally adjudicated adversely to the respondents. It would be a remarkably strange commentary on the procedure in the administration of justice if, when these matters had been finally adjudicated adversely to the respondents, they should be permitted to change their hold entirely and plead that there was in fact no contract and no claim presented or allowed, and that nothing whatever was due to the relator on account of such transaction. It is hard to conceive where litigation would end, if parties were permitted to try their action upon one ground at one time, and upon an entirely different and inconsistent ground when the first question had been determined adversely. It seems to us that the reason for the rule invoked by the relator could hardly be more apparent than in the present case. It has been announced in this jurisdiction, as well as in many others, that "where a party gives a reason for his decision and conduct touching a matter involved in controversy, he is estopped after litigation has begun from changing his ground and putting his conduct upon another and different consideration." The foregoing may now be regarded as a settled rule of law of this court. *Ballou v. Sherwood,* 32 Nebr., 666; *Frenzer v. Dufrene,* 58 Nebr., 432; *Railway Company v. McCarthy,* 96 U. S. 258.

It is urged by the respondents that after a general reversal upon an appeal to a court of last resort and the remanding of the case for new trial, the issues may be reformed. In a proper case, this is conceded. But even if counsel's contention in this respect be true, it does not follow that the rule of law before referred to does not apply in full force. It is contended that, no objection having been interposed, the right to invoke the rule claimed is thereby waived. We do not so regard it. The relator properly pleaded facts showing it entitled to the relief sought and the ground upon which the respondents re-

fused to act.   The answer denies these statements and pleads other facts which defendants seek to interpose as a defense to relator's claim.   The right to invoke the rule arises by reason of the conduct of parties as established by the evidence before litigation has begun, and is not rendered unavailable because of other issues raised by the pleadings.   The ground upon which respondents refused to act, when proved or admitted, operates as an estoppel against the interposition of the other defenses pleaded in the answer.   The very essence of the rule and object sought is to prevent a change of ground of conduct relative to matters in controversy assumed before litigation, after the adverse party has been driven to the courts to establish his rights to the relief claimed. The reason for the rule is made quite obvious by the course of the present litigation.   Again, by section 652 of the Code, governing the subject of mandamus, it is especially provided that "if an answer be made containing new matter, the same shall not in any respect conclude the plaintiff, who may, on the trial or other proceeding, avail himself of any valid objection to its sufficiency, or may countervail it by proof, either in direct denial or by way of avoidance."   For these reasons we think the rule entirely applicable to the case at bar.

But to proceed directly to the contention of the respondents, that no contract was in fact consummated between relator and respondents, we must also resolve that proposition in favor of relator.   The contract was entered into between S. L. Wickersham, representing the Seth Thomas Clock Company, party of the first part, and the county of Cass, represented by the county commissioners, party of the second part.   It provided for furnishing and properly constructing a tower clock in the county court house, for which the county agreed to pay $981.   It was signed in the name of S. L. Wickersham without designation as agent or otherwise than as in an individual capacity, and by two of the county commissioners, representing the party of the second part.   Under the terms of the agree-

ment the clock was furnished by the relator and a claim presented for the sum agreed to be paid "as per agreement." With reference to the claim of respondents that the contract was that of Wickersham and not that of the relator, it is proper to say, first, a contract must generally be construed by reference to its own terms and conditions; but in cases of ambiguity or uncertainty, other evidence is admissible, not by way of contradiction, but in explanation of the uncertain and ambiguous terms; second, in cases of doubt and uncertainty, the court will look to the subsequent acts of the parties under the contract; and third, where both parties to a contract, with knowledge of its terms, by their action under it, have given it the same construction, it is generally a safe rule to adopt such construction. *School District v. Estes*, 13 Nebr., 52; *Hale v. Sheehan*, 52 Nebr., 184, and cases therein cited. The tendency of all evidence throughout the entire proceedings, until the former opinion of this court was filed, is to establish the contract as being one between the relator and respondents. The parties, during all this time, have so treated it, and it may now, we think, with reasonable assurance of correctness, be regarded as the contract of the parties to the suit. Upon the point of the agent's part in the execution of the contract and his signature thereto rather than that of the principal, we think, from an inspection of the contract, it may be said to be the contract of the clock company. The agent represents himself as representing the clock company. The clock is to be furnished by the company. There is nothing save the signatures from which the inference may arise that the agent is acting not for the company but on his own behalf. It is held by this court that it is sufficient if, from the terms of the instrument itself, or any other matter therein, it appears that the party intended it as the agreement of the principal, and if his name appeared therein, however informally, it may be signed by the agent. *Wheeler v. Walden*, 17 Nebr., 122; *McWilliams v. Lawless*, 15 Nebr., 131; *Baker v. Chambles*, 4 Greene [Ia.], 428. We

are of the opinion, from the contract itself, as well as the construction placed thereon by the parties to it, that the contract was one between the relator and respondents acting as commissioners of said county.

Another view of the subject worthy of notice is that upon the first trial of this case the same contract was under consideration as the basis of relator's right to the relief therein sought, and that the construction therein given, where it is held to be a contract between relator and respondents, has become the law of the case, and will not be overturned unless manifestly incorrect. *Lane v. Starkey*, 20 Nebr., 586; *Shamp v. Meyer*, 20 Nebr., 223; *Meyer v. Shamp*, 51 Nebr., 424; *City of Hastings v. Foxworthy*, 45 Nebr., 676; *Todd v. Houghton*, 59 Nebr., 538. If it be said that, in the first opinion, the point as to who the contracting parties were was not directly decided, then it may be said to fall within the following rule, which will be found in *Hayden v. Frederickson*, 59 Nebr., 141: "Where a cause is brought a second time into this court, the first decision will be deemed the law of the case, not merely as to the points expressly decided, but to all questions presented by the record, and necessarily involved in the decision, and ordinarily will not be re-examined." That a contract existed between the parties in this action was obviously and necessarily involved and determined in the opinion first rendered. See, also, *Home Fire Ins. Co. v. Johansen*, 59 Nebr., 349.

It is urged that, because an issue as to the existence of the contract is raised in the second trial for the first time, the rule does not apply, and we are cited to the language of Judge Reese in *Lane v. Starkey, supra*, in support of counsel's view on that point. We do not think this case comes within the exception referred to. The construction of the contract under consideration is a question of law rather than of fact, and while evidence may be admitted to explain its terms when uncertain or ambiguous, or to show the conduct of parties with reference to a practical construction of it, this does not change the character of

the proposition to be decided, nor does it render it a question of fact to be determined according to the evidence in each particular case or in different stages of the trial of the same case. It having been determined in the first trial that the contract was one between the relator and respondents, this decision should be adhered to as a final adjudication of the matter, unless it appears clearly wrong. *City of Hastings v. Foxworthy, supra.*

It is next urged that the relator is not entitled to the relief prayed for, because, first, no claim against the county has ever been presented; second, no claim was ever filed; and third, the claim presented was not verified as required by section 37, article 1, chapter 18, Compiled Statutes, 1899. These objections will be considered together. While the claim presented recites the names of the commissioners, and describes them as commissioners of Cass county, it shows upon its face that it is a claim in favor of relator for putting up complete a tower clock with attachments in the court house as per agreement. It is apparent from an examination of the bill, and especially in connection with the contract referred to, that it is a claim against the county and describes the commissioners in their official capacity and as the representatives of the county. At most, it was only an irregularity which might have been taken advantage of in connection with its approval, which in no way affects the jurisdiction of the commissioners or their authority to act; their action therein without objection would be treated as a waiver of the irregularity. The contract was with the county, by which, according to its terms, a certain sum was to be paid by the county for the clock when completed, and a claim was presented for this amount in pursuance of such agreement. The claim was delivered to the clerk to be acted upon by the board, and was by them approved and allowed. The failure of the clerk to indorse upon the claim the fact and time of filing in no way militates against its validity. The fact that it was filed, that is, deposited with the clerk to be preserved in

his office, and acted upon by the board of county commissioners, is abundantly proven by the evidence; and the further fact that it was received by the board and acted upon is confirmatory of its filing, and is sufficient to show its due presentation and allowance against the county. The want of any verification of the claim, showing it to be just and true, is worthy of more serious consideration. It is contended that the action of the board upon an unverified claim of this character is null and void, the board being entirely without jurisdiction. We are disposed to the view that this proposition has also been adjudicated in the former trial adversely to the respondents, and the rule already referred to is applicable here. If, as claimed, action of the commissioners is void for want of jurisdiction, that fact could be raised in any stage of the proceedings, and having been raised, it was there determined that, at most, it was an irregularity, not jurisdictional in its nature, which had been waived by the parties because not seasonably presented. *State v. Board of Commissioners of Cass County*, 53 Nebr., 767. But, conceding the matter is not *res adjudicata*, we think the determination of the question must result adversely to the respondents. By section 22 of the chapter referred to, counties have authority and power "to make all contracts and to do all other acts in relation to the property and concerns of the county, necessary to the exercise of its corporate powers." Section 23 provides that the county board shall have power "to examine and settle all accounts against the county, and all accounts concerning the receipts and expenditures of the county." By section 37, the one relied upon in support of respondent's contention, it is provided that all claims against the county shall be verified and filed with the county clerk, and also how appeals may be taken by the party aggrieved; and section 38 provides for an appeal by a taxpayer from the allowance of any claim. In *Perkins County v. Keith County*, 58 Nebr., 323, 326, it is said, with reference to sections 23 and 37, by Judge Sullivan, writing the opinion of the court: "From

the language just quoted it is entirely clear that section 37 is not a grant of power to the county board, but rather a provision regulating the exercise of the power granted in section 23." The authority or jurisdiction of the commissioners to act upon claims against the county is derived from section 23, and not from section 37. The omission to verify would not deprive the board of commissioners of jurisdiction or authority to act. *Myers v. McGavock*, 39 Nebr., 843; *Trumble v. Williams*, 18 Nebr., 144; *County of Clinton v. Pace*, 59 Ill. App., 576. The same question herein presented was before the court in *State v. Cather*, 22 Nebr., 792, where the answer alleged that the account upon which the writ of mandamus was asked had never been verified. It is there said, p. 796: "There is a denial of the authority of the county board, in 1884, to make the allowance, and it is claimed that there is no verified account filed with the board. But the account evidently had been pending before such board for a number of years and had been acted upon by it. There is no claim of fraud or undue means in procuring the allowance of the account, and the allegations are too vague and indefinite to constitute a defense."

It is pleaded in the answer last filed that the contract was entered into between the county and one C. M. Wickersham, doing business in the name of S. L. Wickersham, and that payment was made to the said C. M. Wickersham, as S. L. Wickersham, as the party rightfully entitled thereto under said contract. Much testimony is submitted to prove that C. M. and S. L. Wickersham are one and the same person. Since respondents have abandoned the plea of payment to relators, and deny the existence of a contract, or that any dealings have been had with the company, by which any indebtedness has accrued to it, we think the question of the identity of S. L. Wickersham is immaterial. This question becomes material in this transaction only for the purpose of determining whether payment was made to a person authorized to receive it on behalf of the relator. In the former

opinion it is held that payment to C. M. Wickersham was without authority, and did not relieve the county from liability of payment to the clock company, or to those authorized to receive payment on its behalf. But conceding this question to still be material, we find nothing in the evidence to justify a change of the view first expressed, to the effect that the payment claimed to have been made was to one unauthorized to receive it, and that C. M. and S. L. Wickersham are different persons. The views then expressed are controlling of the proposition now, and should be adhered to, notwithstanding the additional testimony submitted on the proposition.

The judgment of the lower court is reversed, and the cause remanded with directions to award a peremptory writ of mandamus, as prayed for by relator.

JUDGMENT ACCORDINGLY.

The foregoing opinion was modified as follows:

NOVEMBER 21, 1900.

The opinion and judgment filed and entered in this case September 19, 1900, modified to the extent that the cause is remanded with directions to award a peremptory writ of mandamus, as prayed for by relator, for the issuance of a warrant on the treasurer of Cass county for the amount of the claim theretofore presented and allowed by the board of county commissioners of said county.